**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

Eastern District of Kentucky
FILED

AUG 0 3 2023

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

**V.**                                              **INDICTMENT NO.** 5:23-CR 83-DCR

**PRAGEETH S. HETTIARACHCHI**

\*   \*   \*   \*   \*

**THE GRAND JURY CHARGES:**

## BACKGROUND

At all relevant times:

1.      Defendant **PRAGEETH S. HETTIARACHCHI** was a resident of the

Eastern District of Kentucky.  **HETTIARACHCHI** was the owner and operator of ZAH

LLC, doing business as Kentucky Dancesport Challenge and The Ballroom House, and

ZAH Investments LLC, doing business as ZAH Construction LLC.  Both ZAH LLC and

ZAH Investments LLC were Kentucky businesses established on May 2, 2014, and July

17, 2018, respectively.  **HETTIARACHCHI** also had ownership and control over

financial accounts at Traditional Bank ending in -3418, under the name of ZAH LLC, and

-1473, under the name of ZAH Investments LLC.

2.      The Paycheck Protection Program ("PPP") was a COVID-19 pandemic

relief program administered by the Small Business Administration ("SBA") that provided

forgivable loans to small businesses for job retention and certain other expenses. The PPP

permitted participating third-party lenders like Traditional Bank to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

3.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents. Traditional Bank used Schedule Cs from IRS Tax Form 1040s filed by small businesses to determine a customer's eligibility for and amount of a PPP loan based on the net profits.

4.      PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia and Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

5.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to fund the

borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

6.      Traditional Bank was a third-party participating lender in the PPP and a federally insured financial institution as defined in 18 U.S.C. § 20.

7.      VICTIM #1 was a female senior citizen living in the Eastern District of Kentucky.  Relevant to this indictment, VICTIM #1 had accounts at Raymond James and Central Bank.  Transfers from VICTIM #1's account at Raymond James to VICTIM #1's account at Central Bank traveled from outside Kentucky to the Eastern District of Kentucky.

## COUNTS 1 - 4
## 18 U.S.C. § 1343

8.      Paragraphs 1-7 of this Indictment are realleged and incorporated by reference as if set forth fully herein.

9.      From on or about April 30, 2020, to on or about March 1, 2021,

### PRAGEETH S. HETTIARACHCHI,

with intent to defraud, devised and intended to devise a scheme to defraud Traditional Bank and the Small Business Administration, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

It was part of the scheme that:

10.      In 2020, **HETTIARACHCHI** submitted, and caused to be submitted, applications for PPP loans to Traditional Bank and the SBA on behalf of ZAH LLC and

ZAH Investments LLC.  These applications including supporting documentation.
Specifically:

    a.  On or about April 30, 2020, **HETTIARACHCHI** submitted, and caused to be submitted, an application for a PPP loan on behalf of ZAH LLC, claiming $8,333 in average monthly payroll to one employee.

    b.  In support of this application, **HETTIARACHCHI** submitted a 2019 Schedule C form for ZAH LLC claiming he had total gross sales of $348,722, total expenses of $200,540, and a net profit of $143,815.

    c.  Based on these representations, Traditional Bank authorized Loan *4369 in the amount of $20,800 to borrower ZAH LLC, which **HETTIARACHCHI** caused to be deposited into ZAH LLC bank account *3418 on May 4, 2020.

    d.  On or about April 30, 2020, **HETTIARACHCHI** submitted, and caused to be submitted, an application for a PPP loan on behalf of ZAH Investments LLC, claiming $8,333 in average monthly payroll to one employee.

    e.  In support of this application, **HETTIARACHCHI** submitted a 2019 Schedule C, showing gross receipts of $284,658, total expenses of $161,352, for a net profit of $120,406.

    f.  Based on these representations, Traditional Bank authorized Loan *5359 in the amount of $20,800 to borrower ZAH Investments LLC, which **HETTIARACHCHI** caused to be deposited into ZAH Investments LLC bank account *1473 on May 4, 2020.

11.    In 2021, **HETTIARACHCHI** again submitted, and caused to be submitted, applications for PPP loans to Traditional Bank and the SBA on behalf of ZAH LLC and ZAH Investments LLC.

    a. On or about January 14, 2021, **HETTIARACHCHI** submitted, and caused to be submitted, a second application for a PPP loan on behalf of ZAH Investments LLC, claiming $8,320 in average monthly payroll to one employee. He also alleged that his gross receipts dropped from $74,945.25 in the fourth quarter of 2019 to $45,589.67 in the fourth quarter of 2020.

    b. In support of this application, Traditional Bank relied on the Schedule C forms submitted with the 2020 PPP loan application.

    c. Based on these representations, Traditional Bank authorized Loan *1969 in the amount of $20,800 to borrower ZAH Investments LLC, which **HETTIARACHCHI** caused to be deposited into ZAH Investments LLC bank account x1473 on February 9, 2021.

    d. On or about January 14, 2021, **HETTIARACHCHI** submitted, and caused to be submitted, a second application for a PPP loan on behalf of ZAH LLC, claiming $8,320 in average monthly payroll to one employee.

    e. In support of this application, Traditional Bank relied on the Schedule C submitted with the 2020 PPP loan application.

    f. Based on these representations, Traditional Bank authorized Loan *3209 in the amount of $20,800 to borrower ZAH LLC, which **HETTIARACHCHI**

caused to be deposited into ZAH LLC bank account x3418 on February 3, 2021.

12.     The 2019 Schedule C forms submitted by **HETTIARACHCHI** were false, in that the 2019 Schedule C forms he actually submitted to the IRS reported significantly lower expenses and, as to ZAH LLC, significantly higher gross sales/receipts, causing the net profits for both ZAH LLC and ZAH Investments LLC to be significantly higher than reality. As a result of submitting the false 2019 Schedule C forms, **HETTIARACHCHI** qualified for PPP loans for ZAH LLC and larger PPP loans for ZAH Investments.

13.     On or about each of the dates set forth below, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

### PRAGEETH S. HETTIARACHCHI,

for the purpose of executing the scheme described above, and in order to effect the objects thereof, transmitted and caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description of Interstate Wire Transmission |
|---|---|---|
| 1 | April 30, 2020 | Submission of PPP Loan application for ZAH LLC |
| 2 | April 30, 2020 | Submission of PPP Loan application for ZAH Investments LLC |
| 3 | January 14, 2021 | Submission of PPP Loan application for ZAH LLC |
| 4 | January 14, 2021 | Submission of PPP Loan application for ZAH Investments LLC |

All in violation of 18 U.S.C. § 1343.

## COUNTS 5 - 7
## 18 U.S.C. § 1343

14.     Paragraphs 1-7 of this Indictment are realleged and incorporated by reference as if set forth fully herein.

15.     From on or about March of 2013 and continuing through at least in or about December 2022,

### PRAGREETH S. HETTIARACHCHI,

with intent to defraud, devised and intended to devise a scheme to defraud VICTIM #1, a senior citizen and customer, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

It was part of the scheme that:

*Loans directly from Victim #1.*

16.     After **HETTIARACHCHI** filed for bankruptcy in March of 2013, **HETTIARACHCHI** took a loan out from VICTIM #1 for $30,000 in July 2013, executed a promissory note, and promised to repay her within five years.

17.     Between June 2013 and 2018, **HETTIARACHCHI** convinced VICTIM #1 to loan him at least **$152,750**, under the false promise of repayment.  Often, VICTIM #1 would wire the funds from her retirement account at Raymond James to her personal account at Central Bank, before writing large checks to **HETTIARACHCHI** or his business.  As of February 2023, **HETTIARACHCHI** had paid VICTIM #1 only $166.

*Bank Loans using VICTIM #1's Credit.*

18.     Beginning in June 2014, **HETTIARACHCHI** convinced VICTIM #1 to co-sign the following loan products for the benefit of him and his wife, under the promise that he would pay back the funds:

   a.   June 2014 - Loan (x0527) at Central Bank for the purpose of setting up his business, amounting to $35,000;

   b.   July 2014 – Refinance loan (x3488) at Central Bank for the purpose of paying off loan x0527, and collecting another $22,310.74 in loan proceeds;

   c.   January 2016 - Line of credit (x7203) at Raymond James for the purpose of paying off Central Bank refinance loan x3488, and collecting an additional $94,020.35 in loan proceeds;

   d.   November 2017 - Five-year balloon loan (x1769) at Central Bank for $141,000 in order to pay off Raymond James line of credit x7203.

19.     **HETTIARACHICHI** made a total of approximately $70,666.85 in payments to Central Bank and Raymond James for the series of loans using VICTIM #1's credit, while VICTIM #1 had to pay $128,475.97 to pay loan x1769 off in December 2022, in order to avoid substantial increase in interest payments.

*Credit card in VICTIM #1's Name.*

20.     In 2015, **HETTIARACHCHI** convinced VICTIM #1 to open Capital One credit cards using her credit for his business. Between 2015 and 2019, **HETTIARACHCHI** and his wife charged approximately $310,000 on these two cards. Among other personal expenditures, **HETTIARACHCHI** charged approximately

$21,567 worth of his daughter's tuition on the Capital One card. As of 2019, VICTIM #1 still owed $30,797 on the Capital One card due to charges made by **HETTIARACHCH**I and his wife, causing Capital One to initiate legal proceedings against VICTIM #1.

21. Throughout this time, **HETTIARACHCHI** falsely promised to give VICTIM #1 a one-fifth stake in his dance company.

22. On or about each of the dates set forth below, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

**PRAGEETH S. HETTIARACHCHI**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date | Description of Interstate Wire Transmission |
|-------|------|---------------------------------------------|
| 5 | August 6, 2018 | **HETTIARACHCHI** made a Capital One credit card purchase on VICTIM #1's Capital One account for his child's school tuition in the amount of $793.07 |
| 6 | August 19, 2018 | **HETTIARACHCHI** made a Capital One credit card purchase on VICTIM #1's Capital One account for his T-Mobile bill in the amount of $698.00 |
| 7 | November 14, 2018 | **HETTIARACHCHI** made a Capital One credit card purchase on VICTIM #1's Capital One account for a utility coop bill totaling $628.28 |

All in violation of 18 U.S.C. § 1343.

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 981(a)(1)(C)
### 28 U.S.C. § 2461
### 18 U.S.C. § 982(a)(2)(A)

1.     By virtue of the commission of the offenses alleged in Counts 1-7 of the

Indictment, **PRAGEETH S. HETTIARACHCHI** shall forfeit to the United States any

and all property, real or personal, which constitutes or is derived from proceeds traceable

to the violations of 18 U.S.C. §§ 1341 and/or 1343. Any and all interest that

**PRAGEETH S. HETTIARACHCHI** has in this property is vested in and forfeited to

the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461 and 18

U.S.C. 982(a)(2)(A).

2.     The property to be forfeited includes, but is not limited to, the

following:

### MONEY JUDGMENT:
A forfeiture money judgment in an amount equal to the gross proceeds obtained
by the Defendant as a result of the offenses charged in this Indictment.

3.     If any of the property listed above, as a result of any act or omission of the

Defendant(s), (A) cannot be located upon the exercise of due diligence; (B) has been

transferred or sold to, or deposited with, a third party; (C) has been placed beyond the

jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been

commingled with other property which cannot be divided without difficulty, the United

States shall be entitled to forfeit substitute property pursuant to 21 U.S.C. § 853(p).

A TRUE BILL

FOREPERSON

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

## **PENALTIES**

**COUNTS 1 to 7:**   Imprisonment for not more than 20 years, fine of not more than $250 or twice amount of loss, and supervised release for not more than 3 years.

**PLUS:**   Forfeiture of all listed property.

**PLUS:**   Mandatory special assessment of $100 per count.

**PLUS:**   Restitution, if applicable.